UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID PEELER,

       Plaintiff,

v.                              Case No. 8:12-cv-1584-T-33MAP

KVH INDUSTRIES, INC.,

       Defendant.

_____/

**ORDER**

    This cause comes before the Court in consideration of Defendant KVH Industries, Inc.'s Motion in Limine (Doc. # 57) and Plaintiff David Peeler's Omnibus Motion in Limine (Doc. # 70), both filed on December 5, 2013.  Both motions are now ripe for the Court's review.  For the reasons that follow, the Motions are granted in part and denied in part as detailed herein.

I.   **Background**

    KVH Industries designs and manufactures satellite communication systems for mobile users on moving platforms such as boats, buses, and motor homes.  (Palmer Dep. Doc. # 31-1 at 4).  On January 29, 2003, Peeler entered into a Manufacturer's Representative Agreement with KVH, by which KVH engaged Peeler as a technical trainer and independent

contractor.  (Agreement Doc. # 32-2 at 2).  As a technical trainer, Peeler was responsible for visiting various distributors who bought products from KVH and educating the distributors' employees on the process of installing, operating, and repairing KVH products.  (Peeler Dep. Doc. # 30-1 at 13).

The Agreement provided that KVH would pay Peeler "on all technical training performed in the Territory to RV, Automotive, entertainment coach, OEM, mass merchant, dealers, and not to exclude any additional pre-approved accounts, a Commission . . . based on percentage of dealer/account sales." (Agreement Doc. # 32-2 at 3).  The Agreement additionally provided that "[t]he Commission will be considered earned when [KVH] receives the Technical Training Report upon completion by the end of each month," and that "[t]he Commission will be paid to [Peeler] by the 20th of each month for the most recently ended month." (Id.).  In conjunction with these obligations, the Agreement required KVH to send to Peeler, "[o]n or before the 15th of each month, . . . a statement of account showing the quantity of trainings completed by Peeler . . . during the month most recently ended and the amount of commission due . . . thereon." (Id.).

From January of 2003 to March of 2004, KVH paid Peeler $135,827.95 in training commissions. (Payment Invoice Doc. # 32-4 at 2). In April of 2004, Peeler and KVH agreed to a different payment arrangement, a Contractor Outline, in accordance with which Peeler received a consistent monthly salary of $5,500 per month plus expenses. (Contractor Outline Doc. # 32-5 at 2; Peeler Dep. Doc. # 30-2 at 12). The parties dispute the reason for the revised payment arrangement. According to KVH, the "reason for the new agreement was [Peeler's] displeasure with the previous agreement, which did not include reimbursement of any form for the expenses incurred . . . in connection with [Peeler's] services rendered to KVH." (Mar. 30, 2005 Letter Doc. # 32-9 at 2). Peeler, however, contends that he "was okay with the way things were," and that he had not expressed concerns prior to 2004 about the way he received payment from KVH. (Peeler Dep. Doc. # 30-2 at 12).

KVH released Peeler as an independent contractor in February of 2005. (Id. at 25). Peeler testifies that, sometime in 2005 after his termination from KVH, a KVH sales representative named Scott Czewski provided him with certain "final reports" containing KVH's internal sales information, referred to as BAAN reports. (Id. at 4; Peeler Dep. Doc. #

30-1 at 8-10).   Based on the details from those reports, Peeler became concerned that KVH had not paid him the total amount of commissions to which he was entitled under the Agreement.  (Peeler Dep. Doc. # 30-2 at 4).

Peeler initiated the instant breach-of-contract action in April of 2012 in Hernando County Circuit Court, after KVH declined to pay Peeler's allegedly unpaid back commissions. (Doc. # 2).  On July 17, 2012, KVH removed the action to this Court on the basis of diversity jurisdiction.  (Doc. # 1). On July 25, 2013, the Court entered an Order denying both parties' motions for summary judgment (Doc. # 48), and in September of 2013, this Court entered an Amended Case Management and Scheduling Order which set this case for the January 2014 trial term (Doc. # 53).

Presently before the Court are both parties' respective Motions in Limine (Doc. ## 57, 70), each of which is ripe for the Court's review.  The Court has reviewed the Motions as well as the relevant responses and is otherwise fully advised in the premises.

## II.  Legal Standard

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order,

remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial. A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried. See LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012) (citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual

5

proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003) ("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

## III. Peeler's Motion in Limine

Peeler seeks to preclude KVH from introducing at trial evidence relating to: (1) the salaries of KVH's corporate executives, including KVH's April 24, 2004, SEC filing; (2) Peeler's March 31, 2004, contract with KVH "or any other prior contracts not exchanged during discovery"; (3) Peeler's termination in 2005; (4) the defenses of laches and statute of limitations, as well as the applicability of Rhode Island law and the ambiguity of the term "dealer/account sales"; (5) testimony that KVH modified the relevant Agreement between

6

January 29, 2003, and March 31, 2004; and (6) accord and satisfaction.  The Court will address each of these issues in turn.

### A.   Corporate Executive Salaries

Peeler argues that KVH should be precluded from introducing evidence – namely, KVH's April 24, 2004, SEC filing – to demonstrate to the jury "that Peeler's commissions are equal to or in excess of what [KVH's] highest corporate executives were paid in 2003."  (Doc. # 70 at 4).  Peeler argues that this evidence must be excluded under Federal Rules of Evidence 401 and 403 because "[t]he salaries of the top KVH corporate executives have no relevance to the construction, interpretation, or performance of the Agreement [between Peeler and KVH]."  (Id.).

KVH responds that the executive salaries are relevant in light of the testimony of former KVH executive vice president Ian Palmer, which explained "that there were loosely imposed limits or ceilings on the amount of commissions that outside contractors might make and that KVH balanced the amount of those commissions with what it would cost KVH to bring that outside contractor on board as an employee."  (Doc. # 82 at 2) (citing Palmer Dep. Doc. # 31-1 at 26).  KVH thus argues that, "[b]ased on these considerations, it is reasonable to

provide the jury with a basis of comparison – what is Peeler claiming was owed to him, but not paid, relative to the other people in the KVH organization." (Id. at 3). The Court agrees.

In this breach-of-contract case, the Court has already determined the relevant contract term "dealer/account sales" to be ambiguous. (See Doc. # 48 at 37-41). Thus, interpretation of this contract term presents a question of fact, and the trier of fact may consider extrinsic evidence in an attempt to discern the intent of the parties by evaluating the surrounding circumstances. See Inland Am. Retail Mgmt., LLC v. Cinemaworld of Fla., Inc., 68 A.3d 457, 464 (R.I. 2013). The executive salaries at issue are one component of the factual circumstances surrounding Peeler and KVH's execution of the relevant Agreement. The Court thus finds evidence of these salaries to be relevant under Rule 401, and further finds that the probative value of this evidence is not substantially outweighed by the concerns enumerated in Rule 403. Peeler's Motion in Limine with regard to the executive salaries is thus denied.

**B.** **Prior or Subsequent Contracts**

Although Peeler argues broadly that "evidence regarding prior or subsequent contracts including the 2004 Contractor

8

Outline should be excluded pursuant to Fed. R. Evid. 401 and 403," the only contract specifically addressed in this context by either party is the 2004 Contractor Outline. (Doc. # 70 at 6-8; Doc. # 82 at 3-5). Peeler argues that the "2004 Contractor Outline would be relevant if Peeler possessed any knowledge in April, 2004 of the actual commissions to which he was entitled in 2003. However, Peeler did not possess knowledge of actual earnings until some point in 2005." (Doc. # 70 at 7). Thus, Peeler contends that the 2004 Contractor Outline does not make his interpretation of the Manufacturer's Representative Agreement more or less probable than it would be without the evidence because, "during the time of the Agreement and for over a year afterwards, Peeler was operating under the assumption that the Agreement was properly paid." (Id.).

KVH argues, however, that "the terms of any prior and post 2003 contractual arrangements between the parties are relevant to the state of mind of both KVH and Peeler when they negotiated the terms [of] the January 29, 2003 Agreement . . . ." (Doc. # 82 at 3-4). In particular, "KVH expects the testimony to establish that Peeler was consistently paid per the terms of his Agreement, but was unhappy with the sporadic and uneven nature of his commission payments. As a

9

result, Peeler and KVH engaged in arms-length negotiations regarding the terms of [the 2004 Contractor Outline] . . . ." (Id. at 4).

As KVH aptly states: "Ultimately, it should be up to the jury to decide whether or not the conduct or actions of the parties during the entire course of their relationship have bearing on the terms and interpretation of the Agreement at issue . . . ." (Id.). The Court finds evidence of Peeler's other contracts to be a proper consideration for the jury in determining the outcome of this action, as it sheds light on the course of performance between the parties. Accordingly, as Peeler objects to this evidence solely on the basis of relevance, the Court denies Peeler's Motion in Limine as to evidence of prior or subsequent contracts.

C. **Peeler's Termination**

Peeler next seeks to exclude evidence relating to the 2005 termination of Peeler's independent contract with KVH, arguing that "any such evidence . . . fails to meet the standard for relevance under Fed. R. Evid. 401." (Doc. # 70 at 9). Peeler also argues that this evidence "creates a danger for unfair prejudice and confusion of the jury." (Id. at 10).

KVH responds by explaining:

> It is undisputed that Peeler first questioned his commission structure with his manager, James Labelle, in June 2003, but did not claim that his commissions had been improperly calculated until 2005, following the termination of his contract. The jury should be allowed to understand both the date of termination and circumstances surrounding that termination to consider fully Peeler's motives and decision to pursue his claims at that time.

(Doc. # 82 at 5). However, KVH has failed to provide the Court with any authority for the proposition that a plaintiff's "motive" for bringing suit is relevant in a breach-of-contract case.

Nonetheless, both parties express an intention to introduce evidence in this case regarding the justifiability of Peeler's delay in bringing this action. If Peeler indeed opens the door to evidence demonstrating the reasonableness of his delay, the Court finds evidence of Peeler's termination appropriately admissible to establish a contextual time frame on this issue. As for Peeler's argument that this evidence creates a danger of unfair prejudice, the Court notes that "[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." United States v. Mills, 704 F.2d 1553, 1560 (11th Cir. 1983) (quoting United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979)). The Court finds that evidence of Peeler's

termination will not so substantially outweigh the probative value of this evidence.

However, the Court notes Peeler's concern regarding two particular emails relating to Peeler's termination, which the parties refer to as the "January 17, 2005 email (termination)" and the "January 31, 2005 email (Peeler no longer with company)." (Doc. # 70 at 8). Peeler argues that "neither of these emails are written by Peeler or any designated witness in this case and constitute inadmissible, out of court statements offered to prove the truth of the matter asserted." (Id. at 9). KVH fails to respond to this hearsay argument.

Without an opportunity to review the relevant documents, and without further briefing as to whether KVH will indeed offer these emails for the truth of the matters they assert, the Court is unable to determine at this juncture whether the emails are appropriately excludable as hearsay. Peeler will have an opportunity to raise a proper objection to the admissibility of these documents if KVH seeks to introduce them at trial. Accordingly, the Court denies Peeler's Motion with regard to evidence of Peeler's termination.

### D.  Legal Arguments Addressed in Summary Judgment Order

Peeler states that KVH "may attempt to argue at trial and present evidence to the jury regarding the following: (a)

12

Plaintiff's claim is barred by statute of limitations; (b) Rhode Island law does not apply; (c) Plaintiff's claim is barred by the doctrine of laches; and (d) the Manufacturer's Representative Agreement is not ambiguous." (Doc. # 70 at 10). Peeler argues that, because the Court "specifically addressed the foregoing arguments" in its Order on the parties' summary judgment motions, KVH "should not be permitted to present evidence that is contrary to the Court's Order." (Id. at 10, 12).

In response, KVH neglects to address the issue of statute of limitations, application of Rhode Island law, or the determination that the relevant contract language is ambiguous. The Court thus grants Peeler's Motion with regard to these issues. KVH's response instead focuses entirely on the argument that "testimony and evidence regarding KVH's defense[ ] of laches should be considered by the jury," and that "Peeler's argument that this Court's decision precludes KVH from proving the affirmative defense at trial is wrong." (Doc. # 82 at 5).

However, KVH offers no support for its apparent contention that the determination of whether laches should bar Peeler's claim in this case presents a proper question for the jury. To the contrary, the Supreme Court of Rhode

Island has explained that, "[b]ecause it is equitable in nature, the applicability of the defense of laches in a given case generally rests within the sound discretion of the trial justice." Hazard v. E. Hills, Inc., 45 A.3d 1262, 1270 (R.I. 2012). Furthermore, with regard to Peeler's delay in bringing this action, KVH does not contend that any disputed facts exist which would require the introduction of certain evidence at trial before the Court could properly determine whether Peeler's delay in bringing this action was negligent or unreasonable.

KVH argues that "[t]he Court's denial of KVH's summary judgment does not become the 'law of the case,' or provide grounds to bar at trial the evidence submitted to the Court during summary judgment. To the contrary, a denial of summary judgment merely defers the matter until final hearing, in this case – trial." (Doc. # 82 at 5). To that end, KVH argues that "[a] court may reconsider its ruling on a motion for summary judgment and may correct an erroneous ruling at any time before final judgment." (Id.) (internal quotation marks omitted). However, KVH has not filed a motion for reconsideration with regard to this Court's Order on the parties' summary judgment motions, nor has KVH identified grounds for the Court to determine that its previous Order

14

constitutes an "erroneous ruling."  Instead, KVH apparently disagrees with the Court's finding that laches is inapplicable in the present case, and seeks to re-submit its argument to the jury in hopes of a different determination at trial.  As mentioned above, however, KVH provides no authority to support the proposition that this question of law could be properly "reconsidered" by a jury.  Accordingly, the Court grants Peeler's Motion in Limine to the extent that KVH may not instruct the jury or otherwise comment on the potential application of the doctrine of laches in this case.

Nonetheless, KVH is permitted to refer to the factual circumstances of Peeler's delay in bringing this action. Otherwise, "KVH would be precluded from arguing that[,] given the passage of time[,] 'many of the preferred sources of evidence that might once have assisted in ascertaining the truth of the matters in controversy are now unavailable.'" (Doc. # 82 at 6) (quoting Doc. # 48 at 35).  This is a legitimate and relevant factual concern that may appropriately be presented at trial.  It would be inappropriate, by contrast, for KVH to inaccurately inform the jury that it has the discretion to find, as a matter of law, that Peeler's claims are barred by the doctrine of laches due to Peeler's allegedly negligent delay in bringing this

15

action.   Such a determination rests within the discretion of the trial court, and not with the jury.   KVH has offered no authority to controvert this principle.   Thus, while KVH may refer to the factual circumstances underlying Peeler's delay in bringing his claim, KVH may not instruct the jury or otherwise comment on the potential application of the doctrine of laches.   Peeler's Motion is granted to this extent.

**E.**   **Contract Modification**

Peeler argues that no evidence regarding modification of the Manufacturer's Representative Agreement should be permitted, "as KVH's 30(b)(6) designee provided binding testimony that the contract was not modified." (Doc. # 70 at 12).   In particular, Peeler cites to the following excerpts from the deposition of Ian Palmer:

> Q:   Do you recall, and by you I mean the corporation recall, one way or the other[,] whether there was any amendment to Exhibit 1 between January 29, 2003 and March 31, 2004?
>
> A:   I do not recall.
>
> Q:   Do you know of any amendment to Exhibit 1 to this deposition between January 29, 2003 and March 31, 2004?
>
> A:   I do not.
>
> Q:   As far as you know, Exhibit 1 to this deposition is the only agreement in place

between Mr. Peeler and KVH between January 29,
2003 and March 31, 2004?

A:    Yes.

*    *    *

Q:    The second thing, you don't have any – KVH has
no knowledge, no document and no knowledge of
any change or modification to the contract
that's Exhibit 1 to this –

A:    We don't have any records that reflect that,
correct.

(Doc. # 70 at 13). Peeler argues that "KVH may not now assert

contract modification as a theory of this case in light of

this binding testimony that no modification occurred."

(Id.).

KVH classifies Peeler's chosen deposition excerpts as

"two deposition sound bites that were taken out of context

and that do not consider the entire content of Mr. Palmer's

testimony." (Doc. # 82 at 7). KVH further responds that,

"[c]ontrary to Peeler's assertion that there were no

modifications to Peeler's Agreement, the record evidence

establishes that there certainly *may have been* modifications

to the Agreement between the parties." (Id.) (emphasis in

original). "Specifically, although Palmer did testify that

he was not aware of any specific amendment made to Peeler's

Agreement, Palmer also testified that it was 'normal and

customary' to 'from time to time' make amendments to the outside sales and training representatives' agreements." (Id.).  Palmer additionally testified as follows:

> Q:   Why were those paid at 2.5 percent?
>
> A:   More than likely, and other sales reps are going to reflect this history as well, the commission percentage changed after the contract was originally executed which occurred from time to time and on a fairly regular basis as we worked with the sales reps to make sure that their commissions were in alignment, and this is an important point, that they were in alignment with what it would cost to hire that person as a direct employee.

(Palmer Dep. Doc. # 31-1 at 26).

Thus, the Court disagrees with Peeler's characterization of Palmer's deposition testimony as "binding testimony that no modification occurred." (Doc. # 70 at 13).  Furthermore, the Court finds that this testimony was not so misleading as to violate "the rule and philosophy against trial by ambush," as Peeler contends. (Id. at 14).  Perfection is not required of a Rule 30(b)(6) corporate designee-deponent.  See QBE Ins. Corp. v. Jorda Enters., 277 F.R.D. 676, 690 (S.D. Fla. Jan. 30, 2012) ("Absolute perfection is not required of a 30(b)(6) witness.  The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation.").

However, the Court notes that KVH is bound to the answers given by Palmer during his Rule 30(b)(6) deposition.   As explained by QBE Insurance Corporation,

> When a corporation's designee legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the "we-don't-know" response can be binding on the corporation and prohibit it from offering evidence at trial on those points.  Phrased differently, the lack of knowledge answer is itself an answer which will bind the corporation at trial.

277 F.R.D. at 690.   In the instance that KVH attempts to provide testimony or evidence at trial which differs from the answers provided during Palmer's deposition, Peeler should bring the matter to the Court's attention.   The Court accordingly declines to completely exclude any evidence regarding modification of Peeler's Agreement, but remains cognizant that KVH will be bound at trial by the answers provided by Palmer during his 30(b)(6) deposition.

### F.   Accord and Satisfaction

Peeler next states that "KVH may seek to comment to the jury or otherwise present information to the jury in relation to the affirmative defense of accord and satisfaction," and argues that "KVH should be estopped from arguing accord and satisfaction, as KVH has continuously refused to acknowledge that there was any breach of the Agreement.  Accordingly, [a]

. . . condition precedent for accord and satisfaction is lacking." (Doc. # 70 at 15-16). Additionally, Peeler argues that "[t]he main issue with this defense . . . is that the dispute between the parties did not arise until Peeler was provided sales information from KVH's [Enterprise Resource Planning system] in 2005," and "KVH's only communications to Peeler subsequent to 2005 were written denials of any breach of contract. None of the communications offered satisfaction or even acknowledged the validity of Peeler's claim." (Id. at 16).

KVH counters that "sufficient evidence exists in the record to establish KVH's defense of accord and satisfaction." (Doc. # 82 at 8). Specifically, KVH explains:

> Peeler testified that in June 2003, he inquired of his manager, James Labelle, as to the manner in which his commissions were paid to him. Later in 2003, Peeler complained that he was having "a hard time managing the variableness of commissions and expenses." Then, in March 2004, KVH met with Peeler and agreed to move Peeler from a commission based arrangement to one of a "fixed fee" arrangement. After those negotiations, Peeler accepted a "contractor outline" . . . and the benefits that alternative arrangement provided to him. The testimony will establish that the parties intended to resolve Peeler's concerns regarding his existing employment relationship by entering this new agreement; and that thereafter, Peeler and KVH performed in accordance with this new agreement.

(Id. at 8) (internal citations omitted).

20

The Court finds Peeler's argument improper at this juncture of the proceedings.  As explained above, a motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried.  Notably, Peeler does not cite a single Federal Rule of Evidence to support his argument that evidence relating to the defense of accord and satisfaction should be excluded as inadmissible at trial.  It is thus apparent to the Court that the relief Peeler seeks exceeds the proper scope of a motion in limine.  The Court is not inclined to entertain a motion in limine seeking resolution of arguments suitably raised in a summary judgment motion.  Peeler's Motion is accordingly denied with regard to the defense of accord and satisfaction.

IV.   **KVH's Motion in Limine**

KVH seeks to exclude the following evidence at trial: (1) Testimony from KVH Sales Representatives, as well as documentation of, or references to, their commission structure or compensation; (2) testimony of attorney Stephen Morrissey; (3) testimony of John Spaulding, the senior vice president of marketing for Stag-Parkway; (4) introduction of an unsigned April 1, 2004 Customer Agreement between KVH Industries, Inc. and River Park, Inc.; (5) any and all

21

references to any adverse inference against KVH; (6) any references to Peeler's claim for statutory interest; and (7) any reference to Peeler's claim for attorney fees. (Doc. # 57 at 1). The Court will proceed to address each of these issues.

A.   **Sales Representative Testimony and Documentation**

1.   **Compensation**

KVH argues that the Court should preclude testimony relating to the compensation arrangements of certain KVH sales representatives. (Doc. # 57 at 3). "KVH expects that Peeler will seek to elicit testimony from these individuals to lend credence to Peeler's commission payment theory. KVH further expects that Peeler will seek to elicit testimony from these witnesses to interpret the terms of *his* agreement." (Id.) (emphasis in original). KVH argues, however, that "Peeler was a *trainer*, not a *sales representative*, for KVH. . . . Accordingly, the manner in which sales representatives, who held different positions and had different responsibilities, were paid is wholly irrelevant to Peeler's compensation." (Id. at 4) (emphasis in original).

The Court finds KVH's Motion particularly unconvincing in light of KVH's own argument in opposition to Peeler's Motion in Limine to exclude evidence of the salaries of KVH

22

corporate executives, discussed above.  In that context, KVH argues that "it is reasonable to provide the jury with a basis of comparison – what is Peeler claiming was owed to him, but not paid, relative to the other people in the KVH organization. . . . [I]nformation concerning KVH executive salaries during the time period of the [A]greement would only assist in the interpretation of the Agreement between the parties."  (Doc. # 82 at 3).  The Court agrees with this principle; thus, for precisely the reason identified by KVH in the context of executive salaries, the Court finds that the salaries of KVH's sales representatives – including details regarding the amount as well as the commission structure – are relevant and admissible under Rules 401 and 403.

Furthermore, Peeler argues that, "[f]or KVH to now take the position that the sales representative commissions have no bearing on Peeler's commissions is disingenuous, at best. It is an undeniable, mathematical fact that KVH used the sales attributed to the sales representatives in order to calculate Peeler's commissions." (Id.).  Thus, the Court finds evidence relating to the compensation of KVH's sales representatives to be at least as relevant as evidence relating to the compensation of KVH's executives.  Whether the commissions

23

paid to these sales representatives had any further relationship to KVH's method of calculating Peeler's commissions is a question of fact for the jury to decide. Accordingly, the Court denies KVH's Motion in Limine with regard to the sales representatives' testimony relating to their own compensation arrangements with KVH.

### 2. Representatives' Speculation as to Peeler's Agreement

Importantly, the Court's finding that KVH's sales representatives may testify regarding their own compensation arrangements with KVH does not condone testimony by those sales representatives regarding Peeler's Agreement. KVH expresses this concern in its Motion in Limine, requesting that the Court "exclude any testimony from sales representatives concerning their 'belief' as to how Peeler should have been paid or their interpretation of the terms in Peeler's Agreement." (Doc. # 57 at 5). KVH argues that, "absent evidence that any of these individuals participated in any meetings or discussions concerning Peeler's commission or compensation structure, these 'witnesses' lack the requisite personal knowledge to testify competently about the matter." (Id.).

A non-expert witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Accordingly, a sales representative may testify as to how Peeler was paid only if evidence is first introduced sufficient to support a finding that the particular sales representative has personal knowledge of Peeler's payment arrangement. Peeler's vague assertion that "Mr. Yontosh and Mr. Czewski are both aware as to how they themselves, and all of the KVH representatives were paid in 2003 through April, 2004," is insufficient to convince the Court that such testimony on behalf of these sales representatives would be appropriate. Accordingly, the Court grants KVH's Motion as to the sales representatives' speculation regarding Peeler's Agreement; mere speculation as to the meaning of the terms in Peeler's Agreement by these lay witnesses will not be permitted. However, the Court will allow Peeler an opportunity to satisfy the requirements of Rule 602 at trial.

Peeler additionally argues that "Scott Czewski, Dan Adams, and George Yontosh must be permitted to testify at trial because they possess personal knowledge of Peeler's performance of technical training on behalf of KVH." (Doc. # 85 at 8). The Court agrees and declines to completely

exclude the testimony of these witnesses, as KVH requests. However, the Court reiterates that any testimony regarding technical training, like any testimony of a lay witness, must be grounded in the witness's personal knowledge of the matter. The Court thus denies KVH's request to preclude these witnesses from testifying at trial.

### B.   **Testimony of Stephen Morrissey**

KVH next requests that the Court exclude the testimony of attorney Stephen Morrissey, "an attorney located in Rhode Island, [who] represented Peeler and two former KVH Sales Representatives . . . in their since[-]abandoned claims for unpaid commissions against KVH beginning in 2005." (Doc. # 57 at 5). KVH "anticipates that Peeler intends to call Morrissey to testify regarding: (1) Morrissey's communications with KVH about Peeler's or other sales representatives' claims and efforts to obtain documentation from KVH; (2) Morrissey's communications with Peeler concerning his claims; or (3) the reasons why Morrissey did not have the capability to represent Peeler or follow through on his claims after 2006." (Doc. # 57 at 6). KVH contends that such testimony should be precluded, as it is "irrelevant, cumulative, and unfairly prejudicial." (Id.).

Peeler responds that Morrissey "will be able to explain KVH's role in making it impossible for Peeler to bring a claim in 2005. This is relevant as to whether Peeler is entitled to statutory prejudgment interest under Rhode Island law." (Doc. # 85 at 9). Furthermore, Peeler contends that Morrissey's testimony is relevant to KVH's "bad faith in defending this claim," and that this testimony is not cumulative "because KVH's litigation conduct is something of which only Mr. Morrissey and Peeler's other attorneys possess personal knowledge." (Id.).

The Court acknowledges KVH's argument that "Peeler and Ian Palmer . . . have already authenticated the correspondence between Morrissey and KVH. Those letters are the best evidence of what was discussed between the parties at that time." (Doc. # 57 at 6). Indeed, to the extent Peeler seeks to elicit from Morrissey's testimony information regarding the content of this written correspondence, the Court excludes such testimony in accordance with the best evidence rule. See Fed. R. Evid. 1002; Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1543 (11th Cir. 1994).

Additionally, the Court recognizes KVH's argument that, "[t]o the extent Morrissey will be called to testify about his communications with Peeler, any such testimony must be

27

excluded," as such discussions are covered by the attorney-client privilege, "and any attempt at the eleventh hour to waive privilege, which has not occurred previously, is necessarily unfair and prejudicial." (Doc. # 57 at 7).

Peeler does not respond to KVH's argument regarding attorney-client privilege; instead, Peeler argues only that Morrissey should be allowed to testify regarding: (1) Peeler's delay in bringing his breach-of-contract claim and (2) KVH's bad faith in defending this claim. (Doc. # 85 at 9). Thus, as Peeler does not indicate that he intends to introduce testimony as to Morrissey's privileged communications with Peeler, the Court declines to analyze at this juncture the hypothetical prejudice that such testimony may cause to KVH. Furthermore, the Court finds Morrissey's potential testimony regarding KVH's alleged bad faith in defending this action to be admissible as a corollary to both parties' expressed intentions to open the door to discussion regarding Peeler's delay in bringing his claim. Thus, with the exception of Morrissey's testimony regarding the content of the written correspondence mentioned above, KVH's Motion is denied as to the testimony of attorney Stephen Morrissey.

**C.   Testimony of John Spaulding**

KVH next seeks to exclude the testimony of John Spaulding, Senior Vice President of Marketing for Stag Parkway, Inc., a "major KVH client." (Doc. # 57 at 8). KVH states that Peeler has identified Spaulding as a record custodian from Stag Parkway, and that KVH "expects Mr. Spaulding will be asked to testify about whether, during 2003 and 2004, Stag Parkway provided KVH reports detailing its sales of KVH product[s] to 'dealers downstream.'" (Id.). KVH argues, however, that such testimony must be excluded because Spaulding "necessarily has no personal knowledge of what Stag Parkway's practices were during that period, since he did not become employed by Stag Parkway until 2005, after the January 29, 2003 to March 2004 period that is at issue in this litigation." (Id.).

Peeler, however, argues that Spaulding "has declared that KVH and Stag Parkway have maintained arms[-]length dealings since his employment in 2005. Further, he will testify that the reporting technology ultimately used to provide reporting back to KVH was not in existence during the period of the Agreement." (Doc. # 85 at 10). Peeler thus asserts that this testimony regarding Stag Parkway's "downstream sales" reporting practices since 2005 is relevant

29

because it makes Peeler's interpretation of the term "dealer/account sales" more likely.

The Court will permit Spaulding's testimony to the extent it complies with all applicable Federal Rules of Evidence. KVH's suspicion that a witness may be asked to testify regarding matters of which the witness lacks personal knowledge does not warrant total exclusion of that witness's testimony. If Peeler indeed seeks to elicit such testimony from Spaulding in violation of Federal Rule of Evidence 602, KVH may properly object at trial.

### D.   **Unsigned River Park Contract**

KVH next seeks to exclude as a potential trial exhibit "an unsigned purported 'Customer Agreement [between] KVH Industries, Inc. and River Park, Inc., [e]ffective April 01, 2004.'" (Doc. # 57 at 8). KVH argues that this document should be excluded "because it lacks foundation and cannot be authenticated." (Id. at 9). KVH acknowledges that its corporate representative, Ian Palmer, "testified that KVH had a contract in place with River Park during the relevant timeframe," but that Palmer "testified that he was unsure whether the [relevant document] was a final version of the [a]greement or whether the training provisions it contains were in effect during the time of Mr. Peeler's engagement as

KVH's trainer." (Id.).  Finally, KVH additionally argues (1)
that the document is "irrelevant as it is outside the relevant
time period," and (2) that the document "also constitutes
inadmissible hearsay since it presumably would be introduced
to establish the truth of the matter asserted: that KVH (i.e.,
Peeler) trained River Park." (Id.).

In response, Peeler does not directly address the issue
of authenticity, but argues that this alleged Contract does
not constitute hearsay because it falls within the scope of
Federal Rule of Evidence 801(d), which states in relevant
part:

> (d) **Statements That Are Not Hearsay.**  A statement
> that meets the following conditions is not
> hearsay: . . .
>
> (2) **An Opposing Party's Statement.**  The
> statement is offered against an opposing
> party and:
>
> (A) was made by the party in an
> individual or representative
> capacity; . . .
>
> (C) was made by a person whom the party
> authorized to make a statement on
> the subject; [or]
>
> (D) was made by the party's agent or
> employee on a matter within the
> scope of that relationship and while
> it existed; . . . .

Fed. R. Evid. 801(d)(2).

Peeler cites to the deposition of Ian Palmer to demonstrate that this document "was, in fact, drafted by Ian Palmer." (Doc. # 85 at 13). Specifically, upon being presented with the document during his deposition, Palmer testified as follows:

> Q:  . . . Mr. Palmer, do you recognize the document that we have in front of you?
>
> A:  Yes, I did.
>
> Q:  And what is it?
>
> A:  It looks like the agreement that we put in place between KVH Industries and River Park starting back in 1999, but amended and effective date of (sic) April 1st, 2004.
>
>                        *   *   *
>
> Q:  . . . [W]hile you were the vice president of sales from 1999 through 2003 or 2004, there was a contract in place, was there not, between KVH and River Park?
>
> A:  There was, yes.
>
> Q:  It's referenced right here?
>
> A:  Yes.
>
> Q:  And during that time period from 1999 through 2004 while you were vice president of sales, did KVH have a contractual obligation like it did as of March 31, 2004, to provide technical training and support to River Park?
>
>                        *   *   *
>
> A:  I don't recollect if that provision was in that original contract and I'll tell you that

32

> I'm the one who wrote the contract and so I
> knew it pretty well, but honestly I cannot
> remember if there was a technical training
> provision in that original contract.  That was
> a long – 1999, we're getting – now we're at 14
> years ago that I wrote that contract.

(Palmer Dep. Doc. # 31-1 at 17-18).

There is more than one acceptable form of document authentication.  See United States v. Caldwell, 776 F.2d 989, 1002 (11th Cir. 1985) ("While [testimony of a witness present at the signing of a document] is certainly one manner of authentication, . . . that method of authentication is simply not available in many cases.  Rather, a document also may be authenticated by circumstantial evidence.").  In this case, the Court finds Palmer's statement that the document "looks like the agreement that we put in place between KVH Industries and River Park starting back in 1999, but amended and effective date of (sic) April 1st, 2004," to be sufficient evidence for authentication in this instance, "in the absence of any evidence of fabrication." Caldwell, 776 F.2d at 1003. The Court is particularly convinced by Palmer's recognition of the document in light of his statement that he was "the one who wrote the contract and so I knew it pretty well." (Palmer Dep. Doc. # 31-1 at 18).

Accordingly, the Court determines that this document is relevant, even though it is outside the time period of Peeler's Agreement, as it nonetheless bears on the parties' respective positions regarding the amount of trainings Peeler performed in this case.  The Court further finds that the document is not excluded as hearsay because it meets the requirements of Rule 801(d).  The Court finds that "[t]his result comports with the function of Rule 901, which makes the Court's determination of authenticity merely a preliminary evaluation and leaves the ultimate decision on genuineness to the jury."  Id.  KVH's Motion is thus denied as to the unsigned River Park Contract.

### E.    Adverse Inference against KVH

In the Court's July 25, 2013, Order on the parties' cross motions for summary judgment, the Court found that KVH's failure to retain certain documents related to this case did not warrant an adverse inference in Peeler's favor.  (Doc. # 48 at 18).  In particular, the Court found an adverse inference would be inappropriate in the absence of evidence that KVH had acted in bad faith.  Although not dispositive of the issue, the Court also considered Peeler's own failure to keep related documentation in this matter.  (Id.).

KVH now moves "to preclude [Peeler] from essentially re-litigating at trial [his] request for an adverse inference against KVH based on the lack of certain documentation." (Doc. # 57 at 11).   KVH argues that Peeler "should be precluded from affirmatively seeking an adverse inference at trial, and also from making any statements or references suggesting to the jury that they should infer bad faith or reach any conclusions based on the absence of documentation from KVH's (sic) or its document retention efforts."   (Id.).

Peeler responds that he "has given no indication that he seeks an instruction regarding an adverse inference in this matter," and thus that "KVH's motion in limine to exclude references to adverse inferences should be stricken as moot." (Doc. # 85 at 14).   However, Peeler maintains that he "should not be denied the right to[ ] refer to KVH's lack of any evidence to support its defenses, namely KVH's lack of internal reports from its customers."   (Id.).[1]   The Court agrees.

---

[1] Peeler additionally argues that "no evidence regarding any adverse inference against Peeler should be allowed to be presented by KVH, as there is no evidence that Peeler intentionally destroyed documents in order to promote his claim."  (Doc. # 85 at 14).   However, because KVH has not indicated its intention to move for such an inference, and because Peeler has inappropriately raised this request in his

The Court's determination in a previous Order that no adverse inference is warranted against a party does not preclude any argument at trial related to the facts upon which the requested adverse inference might have been premised.  As neither party asserts a desire to seek an adverse inference at this stage of the litigation, the Court denies as moot KVH's Motion with regard to this issue.

### F.   Peeler's Claim for Statutory Interest

Peeler argues that he is entitled to statutory prejudgment interest pursuant to Section 9-21-10, Rhode Island General Laws, on any award of damages he may recover at trial.  KVH moves the Court to exclude any mention of such an award in front of the jury.  (Doc. # 57 at 11).  In response, Peeler states that he "does not intend to try the issue of an award of statutory prejudgment interest in front of the jury and will amend his demonstratives to remove prejudgment interest from the total damages calculations." (Doc. # 85 at 14).  Accordingly, because the parties agree that mentioning the issue of prejudgment interest during the trial would be inappropriate, the Court denies as moot KVH's Motion in Limine as to Peeler's Claim for statutory

---

response rather than a separate motion, the Court declines to address this issue herein.

prejudgment interest. However, Peeler is nonetheless permitted to demonstrate the reasonableness of his delay in filing this lawsuit.

### G.    Peeler's Claim for Attorney Fees

KVH's Motion in Limine seeks not only to preclude Peeler from introducing evidence relating to attorney fees at trial, but also seeks an order "strik[ing] the demand for fees from Peeler's Complaint" because no contractual or statutory basis for an award of fees exists.  (Doc. # 57 at 12-13).  As the present Motion in Limine is not the proper vehicle by which this substantive motion to strike may be asserted, the Court denies KVH's request without prejudice.  The parties will have an opportunity to fully brief the Court on the issue of attorney fees after the conclusion of trial.

In response to KVH's motion to preclude Peeler from introducing evidence relating to attorney fees at trial, Peeler argues that he "must be permitted to present evidence of KVH's bad faith in defense of this claim to support an award of attorney's fees," although Peeler acknowledges that "this is not an issue to be considered by the jury."  (Doc. # 85 at 16).

Because the Court has already determined that KVH's alleged bad faith in defending this action would be admissible

as a corollary to both parties' expressed intentions to open the door to discussion regarding Peeler's delay in bringing his claim, Peeler may introduce evidence to establish a factual basis for this alleged bad faith. However, as the issue of attorney fees would be an improper consideration for the jury, the Court grants KVH's Motion to the extent it seeks to preclude any mention of attorney fees during the trial.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant KVH Industries, Inc.'s Motion in Limine (Doc. # 57) is **GRANTED in part and DENIED in part** as detailed herein.

(2) Plaintiff David Peeler's Omnibus Motion in Limine (Doc. # 70) is **GRANTED in part and DENIED in part** as detailed herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>13th</u> day of January, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

38