UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID PEELER,

        Plaintiff,

v.                         Case No. 8:12-cv-1584-T-33TGW

KVH INDUSTRIES, INC.,

        Defendant.

_____/

**ORDER**

This cause comes before the Court in consideration of the following five Motions: (1) Plaintiff David Peeler's Renewal of the Motion for Judgment as a Matter of Law and to Amend Judgment to Tax Costs (Doc. # 123), filed on February 20, 2014; (2) Peeler's Motion for New Trial on Damages, or in the Alternative, Motion for Additur (Doc. # 124), filed on February 20, 2014; (3) Peeler's Motion for Application of Prejudgment Interest (Doc. # 125), filed on February 21, 2014; (4) Defendant KVH's Motion to Strike Peeler's Untimely Bill of Costs (Doc. # 126), filed on February 25, 2014; and (5) KVH's Motion to Strike Plaintiff's Post-Trial Motions (Doc. # 127), filed on February 25, 2014. After careful consideration, the Court now addresses each Motion in turn.

I.   **Background**

KVH Industries designs and manufactures satellite communication systems for mobile users on moving platforms such as boats, buses, and motor homes.  On January 29, 2003, Peeler entered into a Manufacturer's Representative Agreement ("the Agreement") with KVH, by which KVH engaged Peeler as a technical trainer and independent contractor.  (Agreement Doc. # 32-2 at 2).  The Agreement provided that KVH would pay Peeler "on all technical training performed in the Territory to RV, Automotive, entertainment coach, OEM, mass merchant, dealers, and not to exclude any additional pre-approved accounts, a Commission . . . based on percentage of dealer/account sales." (Id. at 3).

The Agreement additionally provided that "[t]he Commission will be considered earned when [KVH] receives the Technical Training Report upon completion by the end of each month," and that "[t]he Commission will be paid to [Peeler] by the 20th of each month for the most recently ended month." (Id.).  In conjunction with these obligations, the Agreement required KVH to send to Peeler, "[o]n or before the 15th day of each month, . . . a statement of account showing the quantity of trainings completed by [Peeler] . . . during the month most recently ended and the amount of commission due .

2

. . thereon." (Id.).

KVH released Peeler as an independent contractor in early 2005. (Doc. # 30-2 at 25). Peeler testified that, sometime in 2005 after his termination from KVH, he received certain KVH sales data and became concerned that KVH had not paid him the total amount of commissions to which he was entitled under the Agreement. (Trial Tr. Doc. # 130 at 90, 116-17).

Peeler initiated the instant breach-of-contract action in April of 2012 in Hernando County Circuit Court, after KVH declined to pay Peeler's allegedly unpaid back commissions. (Doc. # 2). On July 17, 2012, KVH removed the action to this Court on the basis of diversity jurisdiction. (Doc. # 1). On July 25, 2013, the Court entered an Order denying both parties' motions for summary judgment (Doc. # 48), and this matter proceeded to a jury trial beginning on January 21, 2014 (Doc. # 102). On January 23, 2014, the jury returned a verdict for Peeler, specifically concluding that KVH had breached its contractual obligations to Peeler under the Agreement and that Peeler had not waived his right to receive the unpaid commissions claimed by him under the Agreement. (Doc. # 108). The jury additionally determined that, as a result of the breach by KVH, Peeler sustained a total of

$11,664.64 in damages.  (Id.).

On February 20, 2014, Peeler filed a Renewed Motion for Judgment as a Matter of Law (Doc. # 123) and a Motion for New Trial on Damages, or in the Alternative, Motion for Additur (Doc. # 124).  Despite receiving a judgment in his favor, Peeler explains that he "seeks relief from the judgment due to substantive legal issues not addressed in the jury's verdict . . . [as well as] various evidentiary issues." (Doc. # 133 at 4).  Additionally, on February 21, 2014, Peeler filed a Motion for Application of Prejudgment Interest.  (Doc. # 125).  In response to these Motions, KVH filed a Motion to Strike Peeler's Bill of Costs[1] (Doc. # 126), a Motion to Strike Peeler's Post-Trial Motions (Doc. # 127), and a response in opposition to Peeler's Motion for Application of Prejudgment Interest (Doc. # 134).  Peeler filed a response in opposition to each of KVH's Motions to Strike (Doc. ## 132, 133) on March 5, 2014.  With leave of Court, KVH filed a reply (Doc. # 137) in support of its Motion to Strike Peeler's Post-Trial Motions on March 17, 2014.  The Court has reviewed the Motions, the responses, and the reply, and is otherwise fully advised in the premises.

---

[1] Peeler attached his Bill of Costs as an exhibit to the Motion for Judgment as a Matter of Law. (Doc. # 123-1).

## II.   <u>Peeler's Post-Trial Motions</u>

### A.   <u>Renewed Motion for Judgment as a Matter of Law</u>

On January 23, 2014, after the close of evidence at trial, both Peeler and KVH moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).[2]  (Doc. ## 104, 105, 106).   The Court took both motions under advisement.  (Doc. # 107).  On the same day, the jury returned a verdict in Peeler's favor.  (Doc. # 108).   On January 24, 2014, the Court denied KVH's motion for judgment as a matter of law, finding a legally sufficient evidentiary basis for a reasonable jury to find for Peeler, and accordingly denied as moot Peeler's motion for judgment as a matter of law.  (Doc. ## 113, 114).

Peeler, the prevailing party in this matter, "now moves to renew his prior motion for judgment as a matter of law as

---

[2] The Court notes that both parties designated their motions for judgment as a matter of law as motions for "directed verdict."   However, "[i]nstead of using the term 'directed verdict' for a motion for judgment as a matter of law when the motion is made prior to the verdict, and the term 'judgment notwithstanding the verdict' when the motion is made after the verdict is returned, Rule 50 now refers to both motions as motions for judgment as a matter of law." <u>Rankin v. Evans</u>, 133 F.3d 1425, 1430 n.6 (11th Cir. 1998). The Court viewed this improper designation as merely a technical error, and therefore treated the motions as motions for judgment as a matter of law in accordance with Rule 50. <u>See</u> <u>Beach-Mathura v. Am. Airlines, Inc.</u>, No. 08-21925-CIV, 2010 WL 1038563, at *6 (S.D. Fla. Mar. 19, 2010).

KVH has been fully heard on the issues of breach, contract modification, and waiver, and pursuant to Fed. R. Civ. P. 50 '[t]here is no legally sufficient evidentiary basis for a reasonable jury to find for that party [KVH],' on these issues." (Doc. # 123 at 2).  Indeed, the Court previously denied as moot Peeler's pre-judgment motion for judgment as a matter of law because the jury did *not* find for KVH in this matter, and the Court found a legally sufficient evidentiary basis for a reasonable jury to find for Peeler.  In returning a verdict for Peeler, the jury found (1) that KVH breached its contractual obligations to Peeler under the Agreement and (2) that Peeler did not waive his right to receive all of the unpaid commissions claimed by him under the Agreement. (See Verdict Doc. # 108 at 1).

The crux of Peeler's argument appears to be that the awarded damages in the amount of $11,664.64 reflects the jury's "confusion" regarding "an oral or unexecuted modification of the Agreement." (Doc. # 123 at 2).  Peeler argues that "[c]onsidering the jury's award of $11,664.64, it is clear that the jury found that the contract was modified, as the damages figure is unmistakably inconsistent with Peeler's actual damages under the contract and the evidence presented at trial." (Id.).  Peeler further reasons that,

6

since "[t]he documentary evidence and undisputed testimony at trial clearly established that KVH breached the Agreement, that Peeler did not waive his rights under the Agreement, and that the Agreement was not modified," the Court must "resolve this issue due to KVH's insistence on an oral or unexecuted modification of the Agreement, which [ ] obviously confused the jury and led to a damages award that was wholly inconsistent with the evidence." (Id.).[3]

KVH moves to strike this Motion because Peeler "failed to preserve his objections to the jury's verdict before the jury was discharged by the Court and he has accordingly waived any claim for an amendment to the verdict." (Doc. # 127 at 2). Thus, according to KVH, Peeler's Renewal of the Motion for Judgment as a Matter of Law (Doc. # 123) and Peeler's Motion for New Trial on Damages (Doc. # 124) effectively request the same relief: an increase in the jury's award of damages. To the extent KVH requests that the Court strike

---

[3] The Court acknowledges Peeler's argument within the Renewed Motion for Judgment as a Matter of Law that KVH "never actually pled contract modification as an affirmative defense in its response to Peeler's Complaint." (Doc. # 123 at 6). However, because Peeler did not raise this argument in either his Rule 50(a) motion (Doc. # 104), or his extensive pre-trial motion in limine (Doc. # 70), both of which contained other arguments related to KVH's modification defense, the Court declines to address this argument raised for the first time in a post-trial motion.

Peeler's Motion for Judgment as a Matter of Law due to Peeler's failure to object to the jury's verdict previously, the Court addresses this argument further below. For purposes of the present analysis, the Court will overlook Peeler's potential waiver of his challenge to the jury's verdict and will analyze the present Motion according to Rule 50.

"Under Fed. R. Civ. P. 50(b), a Court may overturn a jury verdict only if: (1) the verdict is premised on incorrect legal standards, or; (2) 'the facts and inferences point so overwhelmingly in favor of one party that reasonable people could not arrive at a contrary verdict.'" Booth v. Pasco Cnty., Fla., 854 F. Supp. 2d 1166, 1170 (M.D. Fla. 2012) (quoting Brown v. Ala. Dept. of Transp., 597 F.3d 1160, 1173 (11th Cir. 2010)). "In deciding whether to overturn a verdict, the Court must view the evidence in a light most favorable to the party opposing the motion." Id. "Moreover, the Court may not make credibility judgments, re-weigh the evidence, and/or substitute its own judgment for that of the jury." Id. "On the contrary, the Court's role is limited to deciding whether there is *some* evidence in support of the verdict such that a reasonable person could have supported it." Id. (emphasis in original).

Importantly, Peeler does not request the Court to overturn the general verdict in his favor. Peeler's exclusive argument is that the damages award in this case is "wholly inconsistent with the evidence." (Doc. # 123 at 2). In particular, Peeler presumes that the only possible reason for an award of damages in the amount of $11,664.64 is the jury's "lack of legal clarity on the issue of modification of the contract." (Id.). However, the Court notes that numerous factual disputes existed in this case regarding the trainings provided by Peeler and the method by which he was compensated for those trainings. Additionally, KVH successfully elicited testimony creating reasonable inferences discrediting Peeler's version of the facts. (See Trial Tr. Doc. # 130 at 105-06 (Peeler's testimony that he lacks many training documents, credit cards receipts, and other documents from the relevant period); Id. at 108 (illustrating a dispute as to which accounts Peeler was already paid for); Id. at 113 (questioning Peeler's calculation of damages)).

As KVH correctly explains, "although the jury heard testimony from Peeler and his witnesses, Scott Czewski and Dan Adams, the jury was free to accept or reject that testimony in determining whether Peeler had met his burden of proving that he had actually provided the training he

claimed." (Doc. # 137 at 3).  To be sure, the Court instructed the jury in this case that "it is the responsibility of the Plaintiff to prove every essential part of his claims by a preponderance of the evidence," and that this standard means "an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true." (See Jury Inst. Doc. # 109 at 6; Eleventh Circuit Civil Pattern Jury Instructions 2013, Basic Instruction 3.7.1).

One example of an obstacle to Peeler's ability to prove his claims by a preponderance of the evidence during trial was the amount of time that lapsed in this case between the time the Agreement was breached and the time of trial. Throughout the trial, testimonial evidence reminded the jury of the unavailability of documents that could have assisted in computing the damages due (Trial Tr. Doc. # 130 at 105-06; Doc. # 118 at 189) as well as the parties' personal difficulty remembering events that transpired over a decade ago (Trial Tr. Doc. # 118 at 189) ("[T]en years ago – I mean, my memory is pretty good, but ten years ago, some of the details of exactly what happened are tough to recall.").

In denying KVH's Motion for Summary Judgment on the basis of laches, the Court explained:

The Court acknowledges, as do the parties in the instant case, that many of the preferred sources of evidence that might once have assisted in ascertaining the truth of the matters in controversy are now unavailable due to the passage of time. However, the Court does not find that the staleness of this case is such that the Court should preclude this matter from proceeding toward a resolution on the merits.

*   *   *

With regard to the extent of prejudice suffered by KVH due to the time lapse in this case, the Court notes that Peeler has been prejudiced likewise; this is not a case involving a plaintiff who stockpiled relevant documents before lying in wait only to ambush the defendant after some predictable destruction of more favorable evidence had occurred. As discussed in reference to Peeler's Motion for Adverse Inference, for instance, Peeler lacks documentation -- once admittedly in his possession -- to demonstrate the amount of training he completed for KVH. The amount of training performed by Peeler constitutes a central dispute of material fact in this case and, as the plaintiff in this matter, Peeler bears the ultimate burden of proving the amount of damages to which he claims he is entitled. Peeler will continue to bear that burden with the added challenge of utilizing decade-old evidence.

(Doc. # 48 at 35-37). Now, after having the benefit of presenting his evidence to a jury, and after that jury returned a verdict in his favor, Peeler argues that the amount of damages awarded is insufficient to compensate Peeler for KVH's breach.

The Court finds that Peeler's concern that the damages award in this case is not high enough is inappropriately

raised in a Rule 50(b) motion because "[t]he jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial." Chaney v. City of Orlando, 483 F.3d 1221, 1228 (11th Cir. 2007). Furthermore, "[t]he fact that Rule 50(b) uses the word 'renew[ed]' makes clear that a Rule 50(b) motion should be decided in the same way it would have been decided prior to the jury's verdict," and that "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." Id. (citing Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 903 (11th Cir. 2004)).

As repeatedly emphasized herein, Peeler is the party who prevailed at trial, in light of which the Court previously denied as moot Peeler's Rule 50(a) motion for judgment as a matter of law. Within that motion, Peeler made no demand for a legal determination that he was entitled to a specific amount of damages. The Court thus declines Peeler's invitation to make specific damages calculations relating to

the purported "clear and uncontroverted evidence of damages" Peeler claims to have presented at trial. Peeler made no such request for a determination of damages as a matter of law in his Rule 50(a) motion, and therefore such a request in Peeler's Rule 50(b) motion is inappropriate.

Peeler may consider his Renewed Motion for Judgment as a Matter of Law to be proper because he requests that the Court make a finding that the jury could not, as a matter of law, have found for KVH on the issue of contract modification – an issue that Peeler raised in his previous motion for judgment as a matter of law. However, to the extent Peeler requests this relief, the Court declines to make such a finding at this juncture. The Court adheres to its previous determination that Peeler's Motion is moot in light of the verdict in his favor, and also in light of this Court's finding that numerous disputed issues of fact could have affected the jury's computation of damages in this case.[4] Given the confines of the Court's role at this juncture – inquiring as to whether there is *some* evidence in support of

---

[4] The Court additionally notes that Peeler's proposed verdict form, which the Court adopted nearly verbatim, proposed a question to the jury on the issue of waiver, but did not propose a similar question inviting a conclusive finding on the issue of modification. (<u>See</u> Doc. # 77-11).

the verdict such that a reasonable person could have supported it – the Court finds that Peeler's Rule 50(b) Motion for Judgment as a Matter of Law is due to be denied.

The Court is persuaded by the procedural explanation in Lyon Development Co. v. Business Men's Assurance Co. of America, 76 F.3d 1118, 1122 (10th Cir. 1996), which describes Rule 50(b) as one that "permits a party to resurrect its earlier motion for judgment as a matter of law after an adverse verdict, [and] was drafted to accommodate Seventh Amendment concerns." Importantly, "the rule does not permit a party in whose favor the verdict was rendered to renew its motion because 'a jury verdict for the moving party moots the issue.'" Id. (citing Advisory Committee Notes, 1991 Amendment to Subdivision (b)).

Peeler's present 50(b) Motion appears to be, in substance, merely an alternative basis for the relief he seeks in his second post-trial motion, titled "Plaintiff, David Peeler's Motion for New Trial on Damages or in the Alternative, Motion for Additur," which the Court examines more closely below. In both Motions, Peeler complains that the jury should have computed a higher damages award in conjunction with its determination that KVH breached its

14

Agreement with Peeler and that Peeler did not waive his right to receive commissions under the Agreement.

The Court found this case appropriate for submission to the jury precisely due to its abundance of disputed factual issues.  The number of trainings Peeler performed, as well as how the parties contemplated Peeler would be compensated for those trainings at the time the parties entered into the Agreement, have been hotly disputed factual issues throughout the course of this litigation, and the parties presented the jury with conflicting evidence on these points.  Peeler essentially argues that the jury's finding that KVH breached its Agreement with Peeler necessarily means that the jury must accept as true all testimony favorable to Peeler on the issue of Peeler's damages resulting from the breach.  This is simply not true; Peeler himself bore the ultimate burden of proving his damages in this case, and the jury was free to weigh the evidence presented and to make reasonable inferences therefrom in arriving at the awarded amount of $11,664.64.

Thus, for all the reasons stated above, the Court denies Peeler's Renewal of the Motion for Judgment as a Matter of Law.

### B. Motion for New Trial on Damages or Alternative Motion for Additur

#### 1. Motion for New Trial

##### a. Failure to Object to Jury Verdict

Peeler has additionally filed a Motion for New Trial on Damages, or in the Alternative, Motion for Additur, citing six separate grounds. (Doc. # 133 at 9). Peeler contends that a new trial is warranted because this Court erred in (1) admitting testimony at trial regarding contract modification, (2) admitting testimony regarding parol evidence, (3) failing to find "judicial estoppel as to Defendant's assertion that documents in evidence were not 'final documents,'" (4) making various discretionary rulings on the manner of witness testimony, (5) permitting a demonstrative aid not admitted into evidence to be sent back into the jury room, and (6) allowing improper closing argument by KVH's counsel. (Id.). Peeler asserts that these errors led to an incorrect award by the jury, and he accordingly moves for a new trial on the issue of damages only pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.

Rule 59 provides in relevant part:

> **(1) Grounds for New Trial.** The Court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows:

> **(A)** after a jury trial, for any reason
> for which a new trial has heretofore
> been granted in an action at law in
> federal court.

Fed. R. Civ. P. 59(a). "Although a comprehensive list of the grounds for granting a new trial is elusive, the Supreme Court has held that a motion for new trial may rest on the fact that 'the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" Johnson v. Clark, 484 F. Supp. 2d 1242, 1246 (M.D. Fla. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)).

As referenced above, KVH has filed a Motion to Strike this post-trial motion as improper in light of Peeler's failure to preserve his objections to the jury's verdict before the jury was discharged. (Doc. # 127 at 2). Peeler responds, however, that he "does not allege an [internally] 'inconsistent verdict' within the meaning of Defendant's cited case law or Fed. R. Civ. P. 49(b)," but rather "argues that the verdict is inconsistent with the great weight of the evidence." (Doc. # 133 at 2). Additionally, Peeler claims "there is a combination of factors over which the jury had no

17

control that could have caused the jury to reach a possible erroneous verdict and upon which the Court should conclude that a new trial is warranted." (Id. at 2-3).

The Court finds Peeler's argument very similar to that of the plaintiff in Sands v. Kawasaki Motors Corp. U.S.A., 513 F. App'x 847, 856 (11th Cir. 2013). In that personal injury case, a jury returned a verdict in favor of the plaintiff for $1.5 million, finding that the plaintiff was entitled to an award for past and future medical expenses, but nothing for pain and suffering. Id. at 850. After the verdict, the plaintiff filed a motion for a new trial on the issue of damages only, which the district court denied. Id. at 850-51. The Eleventh Circuit affirmed the district court's denial because the plaintiff had failed to object to the jury verdict as inconsistent before the jury was excused. Id. at 857.

Like Peeler, the plaintiff in Sands insisted "that she is not challenging the verdict as inconsistent, and that she is instead arguing that the verdict was against the 'manifest weight' of the evidence." Id. Specifically, the Sands plaintiff reasoned that "the jury, having found that Kawasaki was liable, could not possibly have concluded that she was

not entitled to damages for pain and suffering." Id. The Eleventh Circuit explained that

> [t]he problem with [this] argument is that there was evidence to support the jury's decision not to award pain and suffering: [the defendant] presented a great deal of evidence suggesting it was not liable for [the plaintiff's] injuries at all. If the jury had credited that evidence over [the plaintiffs'] evidence, then [the plaintiff] would not have been entitled to any damages, including damages for pain and suffering. But the jury did not credit [the defendant's] evidence, which is exactly [the plaintiff's] point: there was no way that the jury could have found liability and yet award no damages for pain and suffering, given the overwhelming evidence of that pain and suffering. All of which means that [the plaintiff] is challenging the jury's verdict as inconsistent, and that challenge in barred on appeal because she did not object to the verdict before the jury was excused.

Id. (citing Coralluzzo v. Educ. Mgmt. Corp., 86 F.3d 185 (11th Cir. 1996)).

Peeler similarly challenges the jury's verdict in this case. Although Peeler insists in response to KVH's Motion to Strike Peeler's Post-Trial Motions that "[n]owhere in [Peeler's] motion seeking a new trial does [Peeler] allege an 'inconsistent verdict' such that any of his objections would have been waived by a failure to object to the verdict prior to dismissal of the jury," (Doc. # 133 at 3), the Court finds Peeler's arguments analogous to that of the Sands plaintiff: Peeler contends that, because the jury found in Peeler's favor

19

on the issues of breach and waiver of the right to receive commissions, there is no way that the jury could have found Peeler was entitled to only $11,664.64.  Indeed, Peeler uses almost the precise language of the <u>Sands</u> plaintiff in seeking a new trial on damages, arguing that "the jury only awarded Plaintiff $11,664.64.  This verdict is inconsistent with the great weight of the evidence."  (Doc. # 124 at 3).

Thus, this Court finds, just as the court in <u>Sands</u>, that Peeler's Motion for New Trial on Damages is due to be denied because Peeler failed to object to the jury verdict at the time it was returned.  <u>See</u> <u>Sands</u>, 513 F. App'x at 857; <u>Coralluzzo</u>, 86 F.3d at 186.  Although <u>Sands</u> and <u>Coralluzzo</u> differ from the instant case in that those cases involved personal injury actions where the plaintiff argued that an award of no damages for pain and suffering was inconsistent with a finding of the defendant's liability, the Court finds that the policy behind this waiver principle applies with equal force here.  That is, "[t]he purpose of the rule is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury."

Coralluzzo, 86 F.3d at 186 (quoting Lockard v. Mo. Pac. R.R. Co., 894 F.2d 299, 304 (8th Cir. 1990)).[5]

Furthermore, the Court notes that the Eleventh Circuit has applied this waiver principle not only in cases challenging a lack of pain-and-suffering damages, but in the breach-of-contract context as well. See, for example, Walter International Productions, Inc. v. Salinas, 650 F.3d 1402, 1420 (11th Cir. 2011), in which the Court explained:

> The Bart Group did not challenge the verdicts in this case as inconsistent until it filed a post-trial motion seeking either judgment as a matter of law, an order altering or amending the judgment, or a new trial on damages.  In that motion the Bart Group argued, among other things, that the jury's . . . verdict awarding no damages was 'inconsistent' with its . . . finding that Mercado was liable to the Bart Group for breaching the parties' contract.  By then the jury was long gone. *Because the Bart Group did not object to the verdicts as inconsistent before the jury was excused, that issue has been waived.*

Id. (emphasis added).  In Fisk Electric Co. v. Solo Construction Corp., 417 F. App'x 898 (11th Cir. 2011), another

---

[5] The Court acknowledges but rejects Peeler's argument that Sands and Coralluzzo are inapposite because the jury in this case did not "award a $0 damage figure after finding breach and no waiver."  (Doc. # 133 at 11).  This argument misses the point. Regardless of the dollar figure awarded, Peeler's argument, like the plaintiff in Sands, is that an award of only $11,664.64 is "inconsistent with the great weight of the evidence" (Doc. # 124 at 3), yet Peeler did not object on the basis of this inconsistency before the jury was discharged.

case involving a contract dispute where the plaintiff filed a post-trial motion to modify the jury's verdict, the Eleventh Circuit reasoned:

> Had Plaintiff objected at the time the verdict was rendered, the district court could have examined the jury's verdict to resolve any potential inconsistencies. Instead, Plaintiff consented to the jury's dismissal and waited until a post-trial motion to raise the issue. Appellate review is not the appropriate time to resolve alleged inconsistencies: we cannot be reasonably sure at this late date exactly what the jury intended when rendering its verdict. Any party wishing to clarify the jury's basis for its verdict was free to do so while the jury was still empaneled; the failure to object waived the ability later to seek review of alleged inconsistencies.

Id. at 901.

The Court accordingly finds that, by failing to object to or seek clarification of the jury's verdict while the jury was still empaneled, Peeler has waived his ability to seek review of the inconsistencies he alleges.   The Court thus declines to grant a new trial on the basis of Peeler's contention that the damages in this case are inadequate.

### b. Other Grounds

Furthermore, to the extent Peeler argues a new trial is necessary "because of improperly admitted evidence, prejudicial statements of counsel, the manner of witness testimony, and unadmitted demonstratives being submitted for

jury deliberations," (Doc. # 124 at 22), the Court disagrees. First, Peeler complains that the Court erroneously admitted testimony at trial regarding contract modification because KVH was bound by its corporate representative's deposition response that he had no knowledge of a specific change or modification to Peeler's Agreement with KVH. (Doc. # 124 at 4). However, as the Court explained in its Order on the parties' motions in limine, KVH's corporate representative also testified that amendments to sales and training representatives' agreements occurred on a "fairly regular basis," and that one of these routine adjustments was "more than likely" the cause of the commission percentage Peeler protests. (Doc. # 88 at 18).

The Court acknowledges that a corporate representative's "we-don't-know" response at deposition is binding on the corporation at trial. See QBE Ins. Corp. v. Jorda Enters., 277 F.R.D. 676, 690 (S.D. Fla. Jan. 30, 2012). However, when read in its entirety, the Court disagrees with Peeler's contention that the trial testimony of KVH's corporate representative deviates impermissibly from the testimony he provided at the deposition. The corporate representative testified that there were no records of any such amendment to Peeler's contract, but that KVH often "amended the program"

by "modif[ying] commission amounts if we modified the form of calculation.  So we became more liberal with the quantities, but we would have pruned back the percentage amount." (Trial Tr. Doc. # 118 at 189; 240-42).  The Court finds this explanation consistent with the corporate representative's deposition testimony regarding KVH's practices involving changing percentage amounts. (See Palmer Dep. Doc. # 31-1 at 26).

Next, Peeler argues that, in permitting KVH's corporate representative to testify regarding KVH's intent as to the ambiguous term "dealer/account sales," the Court impermissibly allowed the corporate representative to offer parol evidence as to other contract terms, such as the term "exclusive" and "all land mobile accounts." (Doc. # 124 at 8).  The Court finds that any such testimony did not result in prejudice to Peeler warranting a new trial.  In the Court's instructions to the jury, the Court specifically identified the ambiguous term "dealer/account sales" as the core of the parties' dispute, and informed the jurors that, "[i]n deciding what a contract term means, you must decide what the parties agreed to at the time the contract was created." (Jury Inst. Doc. # 109 at 9).  KVH's corporate representative testified amply regarding KVH's common practices, the history

of the business, and the day-to-day operations of the company. (See, e.g., Trial Tr. Doc. # 118 at 148-67).  To the extent the corporate representative may have commented on the intent of the parties with regard to a different contract provision, the Court finds that Peeler suffered no undue prejudice as a result.  Peeler's counsel had the opportunity on redirect examination to question the corporate representative with regard to Peeler's trainings and KVH's customers, thus clarifying any confusion or bias Peeler contends the purported parol evidence may have created among the jurors. (Trial Tr. Doc. # 118 at 232-47).

Peeler additionally claims that a new trial is warranted because KVH's corporate representative testified at trial, for the first time, that he did not know whether certain reports were "final documents" reflecting sales from KVH's customers that were used to compute the commission totals due to KVH's representatives.  (Doc. # 124 at 12-14).  Peeler claims that judicial estoppel should prevent KVH from making such a statement, since it is "completely incompatible with Defendant's prior presentation of these documents throughout the underlying litigation of this case, which it represented as containing 'unit totals from national account customers.'" (Id. at 14).  At this juncture, the Court is disinclined to

find that KVH's characterization of certain spreadsheets as containing "unit totals" from customers is necessarily incompatible with the statement of KVH's corporate representative at trial: "I just don't know if they are the final documents that were used for the check-writing package," (Trial Tr. Doc. # 118 at 130), particularly given the circumstances of this case and the understandable lack of documentary evidence on behalf of both parties due to the passage of time.   Thus, the Court finds no cause to grant Peeler a new trial on this basis.

Peeler next argues he is entitled to a new trial because this Court committed "error with respect to discretionary rulings on manner of witness testimony and overruled objections." (Doc. # 124 at 15).   Peeler complains that the Court permitted KVH to "recross several of Plaintiff's witnesses notwithstanding the fact that new matters were not brought out on redirect examination" (id.), permitted KVH "to go outside the subject matter of the direct examination despite objection by Plaintiff" (id. at 16), permitted KVH's corporate representative to testify in the narrative (id. at 17), and overruled Peeler's copious objections at trial, all of which, Peeler contends, substantially prejudiced his case. Again, the Court disagrees.

Pursuant to Federal Rule of Evidence 611, the Court has the authority to exercise "reasonable control over the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611. The source of many of Peeler's objections at trial was this Court's discretionary application of what has been termed the "one-appearance rule." See Lyman v. St. Jude Med. S.C., Inc., 580 F. Supp. 2d 719, 727 (E.D. Wisc. 2008). As the term implies, the one-appearance rule promotes judicial economy and the witness's convenience by permitting the witness to be called only once. As described in Lyman, "St. Jude will produce [the witness] during St. Jude's case-in-chief for direct examination by St. Jude. Following this direct examination, counsel for plaintiffs may cross-examine [the witness] without being limited to matters covered in the direct examination." Id. at 727-28. Despite informing Peeler's counsel of the Court's intention to proceed in accordance with this method of witness presentation, Peeler's counsel repeatedly objected at trial with regard to questioning outside the scope of direct examination. The Court adheres to its decision at trial to permit questioning of the witnesses in this manner, and finds that Peeler did not suffer such prejudice due to this method of questioning that he is entitled to a new trial.

Peeler also complains that the Court permitted a sketch drawn by KVH's corporate representative during his testimony at trial to be sent back to the jury room during deliberations despite the sketch not being admitted into evidence. (Doc. # 124 at 18). Peeler compares the corporate representative's sketch of KVH's distribution channels to the demonstrative exhibit permitted into the jury room in Baugh ex rel. Baugh v. Cuprum S.A. de C.V., 730 F.3d 701 (7th Cir. 2013). In Baugh, a products liability case brought by a plaintiff who "suffered a severe brain injury when the . . . ladder he was using to clean his gutters buckled and collapsed," id. at 703, the Court permitted an exemplar of the ladder in question, which had been allowed at trial solely for demonstrative purposes, to be sent to the jury for its use during deliberations. Id. Since the plaintiff had objected at trial to the use of the exemplar as substantive evidence, the Seventh Circuit found it was an abuse of discretion for the trial court to send the object to the jury. Id. Peeler also analogizes the sketch to "a chart or placard which is not evidence but used to illustrate and aid in conveying an argument to the jury." (Doc. # 124 at 19).

The Court finds that the sketch drawn by KVH's corporate representative is unlike an exemplar used at trial solely for

demonstrative purposes, and is also unlike a demonstrative aid prepared by counsel in advance of trial.  In this case, the jury heard the testimony of KVH's corporate representative and observed him create the sketch from scratch in conjunction with his testimony.  The Court finds that the jury's ability to view this sketch during deliberations did not prejudice Peeler because the jury had the benefit of observing the source of the sketch, its purpose, and the circumstances under which it was prepared. Peeler's argument that the sketch "could have left the jurors with the final impression that Defendant's interpretation of the term 'dealer/account sales' was the . . . interpretation upon which they should calculate damages," (Doc. # 124 at 19), is unfounded in light of these considerations.  The Court accordingly finds that permitting the sketch to be sent to the deliberation room does not constitute sufficient grounds to grant a new trial for Peeler.

Finally, Peeler argues that a new trial is appropriate in light of certain comments made by KVH's counsel during closing argument, including counsel's expression of her own beliefs - "I think that's probably the most incredible thing I've heard throughout the whole trial" - and counsel's characterization of the Agreement between the parties and

other documents in evidence.   (Doc. # 124 at 20).   Peeler

also complains that KVH's counsel misguided the jury on the

issue of modification and improperly commented on the absence

of a potential witness, Mr. LeBelle.  (Id. at 21).

     The Court finds that Peeler's concerns relating to these

allegedly inappropriate comments during closing argument did

not result in prejudice to Peeler in light of the Court's

earlier reminder to the jury that "what the lawyers say isn't

evidence, ladies and gentlemen.   So this is not evidence at

all, and you need to rely on the testimony in this case."

(Doc. # 119 at 37).   After closing arguments, along with the

Court's instructions to the jury on the substantive law of

the case -- including modification, which Peeler contends

KVH's counsel mischaracterized (See Jury Instr. Doc. # 109 at

14) -- the Court again instructed the jury that "Evidence

includes the testimony of witnesses and exhibits admitted.

But, anything the lawyers say is not evidence and isn't

binding on you."  (Id. at 3; Eleventh Circuit Civil Pattern

Jury Instructions 2013, Basic 3.3).   Furthermore, Peeler did

not object contemporaneously with the allegedly improper

argument.[6]  (See Doc. # 119 at 15-34).

---

[6] The Court acknowledges that under certain circumstances
"improper argument may be the basis for a new trial even if

Because the Court finds that neither the closing argument of KVH's counsel nor any other perceived error listed by Peeler in his Motion for New Trial on Damages or, in the Alternative, Motion for Additur, rendered the trial unfair to Peeler, the Court finds Peeler's Motion for New Trial is due to be denied.

## 2. **Motion for Additur**

"The Supreme Court has held that the Seventh Amendment prohibits a federal court from granting additur and increasing a jury's award of damages." Sepulveda v. Burnside, 380 F. App'x 821, 823 (11th Cir. 2010) (citing Dimick v. Schiedt, 293 U.S. 474, 486-87 (1935)). Peeler argues, however, that this case falls under an exception to that rule, because "the Eleventh Circuit has held that additur may be constitutionally permissible when liability has been established and damages are not in dispute." (Doc. # 133 at 13) (citing EEOC v. Massey Yardley Chrysler Phymouth, Inc., 117 F.3d 1244, 1252-53 (11th Cir. 1997)).

"[A] party seeking to challenge the jury verdict bears a high burden to overcome." State Contracting & Eng'g Corp.

---

no objection has been raised." McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990). However, the Court does not find that the interest of substantial justice mandates a new trial in this case. See id.

v. Condotte Am., Inc., No. 97-7014-CIV, 2002 WL 34365826, at
*2 (S.D. Fla. June 4, 2002).  As explained by the State
Contracting court, "[i]n this Court's years of experience
with jury verdicts, it is difficult if not impossible to
decipher what calculations the jury made to arrive at its
verdict." Id.  The problem with Peeler's argument for additur
is that, in this case, there is no undisputed amount that the
Court can simply award as damages in light of the jury's
unspecific finding that KVH breached the Agreement.  The
burden rested with Peeler to prove exactly what damages he
incurred as a result of the breach.  "The jury obviously chose
to believe [Peeler's] claims only to a limited extent."
McRevy v. Ryan, No. 08-508-CG-B, 2010 WL 749327, at *4 (S.D.
Ala. Feb. 26, 2010).

As previously noted, the Court instructed the jury in
this case that "it is the responsibility of the Plaintiff to
prove every essential part of his claims by a 'preponderance
of the evidence,'" and that this standard means "an amount of
evidence that is enough to persuade you that the Plaintiff's
claim is more likely true than not true." (Jury Instr. Doc.
# 109 at 6).  Through the offering of conflicting testimony
over the parties' intended meaning of the term
"dealer/account sales," impeachment of witness testimony

32

regarding training of certain accounts, disputes over what amounts had already been paid to Peeler, and testimony relating to the unavailability of preferred documentary evidence in this case due to the passage of time, the jury faced a multitude of discrepancies regarding the amount of damages, if any, owed to Peeler. The jury ultimately relied on Peeler's evidence to the extent it determined that $11,664.64 represented an appropriate award of damages in this case, and the Court finds no reason to disturb the jury's finding in this regard.

Accordingly, Peeler's Motion for New Trial on Damages or in the Alternative, Motion for Additur, is denied in its entirety.

## III. __Prejudgment Interest__

### A.   __Background__

Before delving into a discussion of prejudgment interest, the Court will provide some history regarding the parties' positions on the issue throughout this litigation. KVH and Peeler filed cross motions for summary judgment on June 6, 2013 (Doc. # 29), and June 7, 2013 (Doc. # 34), respectively. As a secondary concern to his substantive arguments, Peeler included within his summary judgment motion a brief assertion of his entitlement to prejudgment interest

pursuant to Rhode Island General Laws § 9-21-10 should he be awarded damages as a prevailing party in this litigation. (Id. at 15).  KVH argued in response to Peeler's motion that an award of prejudgment interest to Peeler would violate public policy and would not promote the purpose of the applicable prejudgment interest statute -- that is, to encourage early settlement of claims.  (Doc. # 38 at 12).

On July 25, 2013, this Court entered an Order denying each party's motion for summary judgment and additionally determining that an award of prejudgment interest in this case would be inappropriate.  (Doc. # 48).  On August 19, 2013, Peeler filed a motion for reconsideration, which requested that the Court reconsider its Order on the motions for summary judgment only as to the Court's determination that an award of prejudgment interest would be inappropriate in this case.  (Doc. # 49).

In ruling on Peeler's motion for reconsideration, the Court reasoned as follows:

> The Court adheres to its previous determination that an award of prejudgment interest may be inappropriate where such award would promote neither of the statutory purposes of § 9-21-10 recognized by the Rhode Island Supreme Court. Martin, 559 A.2d at 1031.  However, in an abundance of fairness to Peeler, the Court defers its determination of whether or to what extent Peeler may be entitled to prejudgment interest until such

time as the parties have had an opportunity to
present all relevant evidence at trial.

(Doc. # 54 at 16).

After the conclusion of the trial in this matter, the
Court issued an Order setting a deadline of February 24, 2014,
for Peeler to file a motion for prejudgment interest in order
to finally resolve the issue in light of the evidence adduced
at trial.  (Doc. # 117).  Peeler accordingly filed his Motion
for Application of Prejudgment Interest (Doc. # 125) on
February 21, 2014.  KVH filed a response in opposition to the
Motion on March 7, 2014.  For the reasons that follow,
Peeler's Motion for Application of Prejudgment Interest is
granted in part.

> **B.**   **Discussion**

In a diversity case, "[w]hether a successful claimant is
entitled to prejudgment interest is a question of state law."
Venn v. St. Paul Fire and Marine Ins. Co., 99 F.3d 1058, 1066
(11th Cir. 1996) (citing Royster Co. v. Union Carbide Corp.,
737 F.2d 941, 948 (11th Cir. 1984)).  The parties agree that
the award of prejudgment interest in this matter turns on the
application of Rhode Island General Laws § 9-21-10.  That
statute provides, in relevant part:

> (a) In any civil action in which a verdict is
> rendered or a decision made for pecuniary damages,

35

> there shall be added by the clerk of the court to the amount of damages interest at a rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein.   Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein.   This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided.

R.I. Gen. Laws § 9-21-10.   The parties disagree, however, as to whether this statute mandates the imposition of prejudgment interest in this case.

As the Court discussed at length in its Order on Peeler's Motion for Reconsideration, although the Rhode Island Supreme Court "has consistently stated that prejudgment interest is not an element of damages but is purely statutory, peremptorily added to the compensatory damages award by the clerk," Oden v. Schwartz, No. 2011-167-Appeal, 2013 WL 2109929, at *17 (R.I. May 16, 2013), that court has also, by deeming application of § 9-21-10 "inappropriate" under certain factual circumstances, Martin, 559 A.2d at 1031, endorsed the principle that a court maintains discretion to determine whether prejudgment interest under § 9-21-10 should be imposed.

A federal court sitting in diversity is required to apply the law as declared by the state's highest court. <u>CSX Transp., Inc. v. Trism Specialized Carriers, Inc.</u>, 182 F.3d 788, 790 (11th Cir. 1999) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)). In the absence of authority directly on point, this Court must "determine the issues of state law as we believe the [state] Supreme Court would." <u>Id.</u> After due consideration of the relevant Rhode Island law, this Court adheres to its previous reliance on <u>Martin</u> in finding that an award of prejudgment interest may be inappropriate in a case where such award would promote neither of the statutory objectives recognized by the Rhode Island Supreme Court: (1) encouraging early settlement of claims, and (2) compensating plaintiffs for waiting for recompense to which they were legally entitled. <u>Martin</u>, 559 A.2d at 1031. (<u>See</u> Doc. # 48 at 47).

However, in responding to Peeler's Motion for Application of Prejudgment Interest, KVH has commendably proposed a compromise within this sparsely developed area of law. That is, for the first time, rather than arguing strictly that prejudgment interest is inappropriate in this case, KVH proposes that, even if "the Court reverses its preliminary conclusion and does decide to award prejudgment

interest, that award, at best, should accrue on the date this litigation was filed (i.e. 2012) and not when Peeler claims it purportedly accrued (i.e. 2004)." (Doc. # 134 at 7 n.5).[7] KVH offers the policy consideration that "[s]etting the point of accrual for prejudgment interest at the date of filing serves to protect against the possibility of a windfall to Peeler on account of his unreasonable delay.  It would also . . . promote the purpose of the statute by discouraging plaintiffs from 'dragging their feet to the courthouse in hopes of increasing their judgment by application of [Rhode Island's] generous 12% interest rate.'"  (Id.). (quoting Buckley v. Brown Plastics Mach., LLC, 368 F. Supp. 2d 167, 173 (D.R.I. 2005)).

Until this point in the litigation, the parties have offered argument on the issue of prejudgment interest only as to whether prejudgment interest should apply from Peeler's proposed date of accrual: "the date KVH failed to pay Peeler the commissions due him," (Doc. # 34 at 15), which Peeler specifies in his post-trial Motion for Application of

---

[7] The Court acknowledges that, first and foremost, KVH argues that prejudgment interest is inappropriate in this case altogether.  (See Doc. # 134).  However, for the reasons stated in this Order, the Court finds that permitting prejudgment interest to accrue from the date this action was filed is appropriate under the circumstances of this case.

Prejudgment Interest is March 31, 2004 (Doc. # 125 at 10). Indeed, the Court premised its initial determination that an award of prejudgment interest would be inappropriate in this case upon Peeler's considerable delay in bringing this action.

However, the parties now propose precise dates of "accrual" for the Court's consideration: Peeler proposes March 31, 2004, the end date of the Agreement (See Doc. # 130 at 24), and KVH proposes April 12, 2012, "the date this litigation was filed" (Doc. # 134 at 7; Doc. # 2 at 4). The Court finds that an award dating back to March 31, 2004, would be inappropriate for the same reasons articulated in the Court's Summary Judgment Order (Doc. # 48) and Order on Peeler's Motion for Reconsideration (Doc. # 54). That is, even after considering all the relevant evidence at trial, the Court finds that much of the delay in bringing this action is attributable to Peeler's own inaction, and not to KVH's refusal to settle Peeler's claim.

In particular, the Court finds an award dating back to March 31, 2004, inappropriate because at that time Peeler himself had not identified to KVH the basis for his current claim. As the Court noted in its Summary Judgment Order, "[o]n April 4, 2005, Peeler sent Palmer a letter explaining

that, since he never signed the Contractor Outline, the Outline did not effectively amend the original Agreement between the parties.  (Apr. 4, 2005 Letter Doc. # 32-10 at 2)."  Thus, Peeler's correspondence with Palmer in 2005 reflects a different basis for dispute than the claim ultimately raised on summary judgment and tried in this case.

If not even Peeler could articulate his grounds for the instant breach-of-contract action until after April of 2005, the Court finds that an award of prejudgment interest before that time certainly would not promote the statutory purpose of encouraging early settlement.

Furthermore, the Court cannot discern from the jury's award of damages the precise date on which Peeler's damages actually "accrued."  Notably, Peeler did not request a more detailed verdict form than that ultimately utilized by the jury in this case.  In fact, the Court adopted almost verbatim the verdict form proposed by Peeler before the start of trial.  (Compare Doc. # 77-11 with Doc. # 108).  Additionally, as explained previously, Peeler did not attempt to inquire into the basis for the jury's verdict before the jury was discharged.  Without any detail regarding the jury's determination that a breach occurred, the Court is unable to pinpoint an exact date on which Peeler's damages began to

"accrue" and, for the reasons already discussed, the Court does not consider March 31, 2004, an appropriate substitute for this undiscernible date.

For these reasons, the Court finds persuasive a decision issued by the District of Rhode Island in 2005, Buckley v. Brown Plastics Machinery, LLC, 368 F. Supp. 2d 167 (D.R.I. 2005). In that breach-of-contract case, a jury returned a verdict in favor of the plaintiff and awarded damages for the plaintiff's contract claim against the defendant. Id. at 167. After the Court's entry of judgment in an amount consistent with the jury's verdict, the plaintiff filed a motion to amend the judgment to include prejudgment interest. Id. at 168. Although the parties in Buckley agreed that the plaintiff was entitled to prejudgment interest on the awarded damages, they disagreed over the point in time from which the interest should be calculated. Id. at 169. Although the plaintiff argued that his cause of action accrued on "the date the contract was signed and the [relevant] payment became payable to him," the defendant maintained that plaintiff's cause of action did not accrue for purposes of § 9-21-10 until the date the plaintiff filed his lawsuit. Id. at 170.

The Buckley court reasoned that, although "[t]he Rhode Island Supreme Court has held that in a breach of contract

41

action, the focus of the inquiry under § 9-21-10 is the point at which the plaintiff actually began to suffer damages," the court noted that "[i]t is also clear that the point at which the contract is breached is not *per se* the point of accrual for prejudgment interest."  Id. (emphasis in original). Furthermore, the court cited to Martin for the principle that "[t]he Rhode Island Supreme Court has repeatedly pointed to the dual purposes to be served by imposing prejudgment interest as part of the remedy for breach of contract: (1) to promote early settlement of claims, and (2) to compensate plaintiffs for the loss of use of money rightfully owed," id. at 171, and found that

> In a case such as this (and no doubt many like it) both purposes are in play.  The point from which prejudgment interest accrues is the date from which Plaintiff's damages actually began, or put another way, from the point at which he was entitled to his money, and did not receive it; however, where, as here, the precise moment at which the rights to payments vested in Plaintiff under the contract is in dispute, another method of determining the date of accrual, one which serves the dual purposes of the statute, may well be appropriate.

Id.  Consistent with these considerations, the Buckley court concluded that prejudgment interest began to accrue on the date the plaintiff filed the lawsuit.  Relying upon Fratus v. Republic Western Ins. Co., 147 F.3d 25 (1st Cir. 1998), Buckley explained that "[s]ince the cause of action in this

42

case is a demand of performance on a contract, the date of accrual for the cause of action was the date of demand, i.e., the date the action was filed." Buckley, 368 F. Supp. 2d at 172 (internal quotation and emphasis omitted).

This Court agrees with Buckley's rationale.  In this case, similar to the plaintiff in Buckley, Peeler's damages arose from the Agreement, "which was the centerpiece of the trial."  Id.  While the jury's verdict determined that Peeler was entitled to $11,664.64, this finding of the jury generally reflects that Peeler sustained this amount of damages "as a result of the breach of contract by [KVH]."  (Verdict Doc. # 108 at 2).  Thus, the verdict reveals only that, at least as of the time Peeler filed this suit, he was due such an amount.

"It is not possible for this Court to accurately determine, based on the jury's verdict, the precise moment [Peeler] was originally entitled to these funds."  Buckley, 368 F. Supp. 2d at 172.  "Rather than speculate as to what the jury's verdict may have represented, this Court believes the best approach is to apply an equitable resolution that adopts the 'time of filing' approach applied by the First Circuit . . . ."  Id. at 172-73.

The First Circuit in Fratus v. Republic Western Ins. Co., 147 F.3d 25 (1st Cir. 1998), analyzed § 9-21-10 in the

context of a breach-of-contract action.   The court reasoned that

> [u]nder R.I. Gen. Laws § 9-21-10, pre-judgment interest is technically calculated from "the date the cause of action accrued."   Since the cause of action in this case is a demand of performance on a contract, the date of accrual for the cause of action was the date of demand, i.e., *the date the action was filed*.

Id. at 30 n.6 (emphasis added).   Thus, the First Circuit affirmed the district court's determination that an award of pre-judgment interest was appropriate, but adjusted the starting date of the interest's accrual to "the date that plaintiffs filed their complaint and demand for payment in the district court."   Id. at 31.

Applying prejudgment interest from the date Peeler filed the present action eliminates the Court's previous concerns regarding an award of prejudgment interest in this case.   That is, the Court previously reasoned that allowing an award with an accrual date in 2004 would be inappropriate because Peeler himself was responsible for much of the delay in initiating this action.[8]   Permitting an award of prejudgment interest

---

[8] As the Court has previously noted, an award of prejudgment interest dating back to 2004 would particularly run afoul of the statutory purpose of encouraging early settlement because, as of 2005, Peeler had not communicated his present claim to KVH, but rather presented an entirely different basis for dispute.

with a starting date of Peeler's date of filing, however, would promote both of the statutory purposes of prejudgment interest articulated by the Rhode Island Supreme Court.

> In coming to such a determination, the Court is mindful that one of the dual purposes of prejudgment interest – encouraging early settlement of suits – speaks not only to defendants, but to plaintiffs as well. By setting the point of accrual for prejudgment interest at the date of filing, plaintiffs are discouraged from dragging their feet to the courthouse in hopes of increasing their judgment by application of the generous 12% interest rate. At the same time, the defendant's incentive to settle is maintained.

Buckley, 368 F. Supp. 2d at 173. The notion of setting the point of accrual for prejudgment interest as the date of filing has been adopted in other cases applying § 9-21-10 as well. See Sargent v. Sargent, No. PC08-1429, 2011 WL 1463981 (R.I. Super. Apr. 13, 2011) ("Mindful that prejudgment interest is not a form of damages and that a premature accrual date would result in a windfall to the Plaintiffs . . . [t]he Court holds that . . . the date Plaintiffs filed their Complaint is the appropriate date from which the clerk should calculate prejudgment interest."); Textron Fin. Corp. v. Great Outdoors Trailer Co., No. 1:07-cv-3733, 2008 WL 2246951, at *2 (N.D. Ohio May 29, 2008) ("In the case of a breach of contract, this statutory prejudgment interest [under Rhode Island law] is held to accrue from the date of

demand, i.e., the date the action was filed, to the date judgment was rendered.") (emphasis omitted).  Furthermore, Rhode Island courts have explained "it is clear that the amount of the award on which interest is to be computed and the date on which the claimant's cause of action accrued are matters of law to be decided by the Court." Commercial Assocs. v. Tilcon Gammino, Inc., 801 F. Supp. 939, 943 (D.R.I. 1992).

Therefore, the Court adds to the judgment in this case prejudgment interest running from April 12, 2012, the date Peeler filed this action in state court (Doc. # 2 at 4), at a rate of twelve percent per annum.

**IV.**  **Proposed Bill of Costs**

On February 20, 2014, twenty-eight days after the jury returned a verdict in Peeler's favor and twenty-seven days after the corresponding entry of judgment, Peeler filed his Bill of Costs as an exhibit to his Motion for Judgment as a Matter of Law.  (Doc. # 123-1).  On February 25, 2014, KVH filed a Motion to Strike Peeler's Bill of Costs as untimely (Doc. # 126) pursuant to Federal Rule of Civil Procedure 54 and Local Rule 4.18.  That Local Rule provides as follows:

> In accordance with Fed. R. Civ. P. 54, all claims for costs or attorney's fees preserved by appropriate pleading or pretrial stipulation shall be asserted by separate motion or petition filed not later than fourteen (14) days following the

46

> entry of judgment. The pendency of an appeal from
> the judgment shall not postpone the filing of a
> timely application pursuant to this rule.

Local Rule 4.18, M.D. Fla.

Specifically, KVH argues that Peeler not only missed the fourteen-day deadline for filing a bill of costs, but Peeler also failed to file a separate motion to tax costs, as required by the local rules. (Doc. # 126 at 2). Instead, KVH notes, Peeler "attached his Bill of Costs to a post-trial motion which essentially seeks that the Jury's verdict (in which he was declared the prevailing party) be set aside." (Id.). KVH also argues that Peeler could have filed a motion to request additional time for filing his Bill of Costs but failed to do so. (Id. at 2-3).

In response to the Motion to Strike, Peeler argues that the Court should find that Peeler's failure to file the Bill of Costs within fourteen days constitutes excusable neglect under Federal Rule of Civil Procedure 6(b). (Doc. # 132). Specifically, Peeler argues that there is good reason for his delay because the Court previously "defer[red] its determination of whether or to what extent Peeler may be entitled to prejudgment interest until such time as the parties have had an opportunity to present all relevant evidence at trial." (Id. at 3) (quoting Doc. # 54 at 16).

47

Thus, Peeler claims that he "understood that the judgment entered January 24, 2014, was not the final judgment because the Court had not ruled on whether prejudgment interest was going to be added to the judgment amount." (<u>Id.</u>).[9]

Rule 6(b) provides, in relevant part: "When an act may or must be done within a specified time, the Court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect is determined by assessing factors including: 'the danger of prejudice to the [nonmovant], the length of delay

---

[9] Peeler additionally explains that he decided to submit his Bill of Costs before February 24, 2014, the deadline imposed by the Court for Peeler's post-trial Motion for Prejudgment Interest, because this Court's Order on February 12, 2014, "advis[ed] that the case was closing on February 24, 2014." (Doc. # 132 at 3). However, the Court's February 12, 2014, Order merely provided as follows:

> "In a previous Order [(Doc. # 54)], this Court deferred its determination of whether or to what extent Plaintiff may be entitled to prejudgment interest until such time as the parties presented all relevant evidence at trial. If Plaintiff intends to file a motion seeking an award of prejudgment interest, Plaintiff is directed to do so on or before February 24, 2014."

(Doc. # 117). Peeler's misconception that the case "was closing" on February 24, 2014, however, is irrelevant for purposes of the present analysis, as Peeler had already missed the fourteen-day deadline for filing his Bill of Costs by the time the Court entered the February 12, 2014, Order.

and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" <u>Seyboth v. Gen. Motors Corp.</u>, No. 8:07-cv-2292-T-27TBM, 2008 WL 1994912, at *1 (M.D. Fla. May 8, 2008) (quoting <u>Advanced Estimating Sys., Inc. v. Riney</u>, 130 F.3d 996, 997-98 (11th Cir. 1997)). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable' neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 392 (1993).

The Court finds Peeler's delay in filing his Bill of Costs to constitute excusable neglect. KVH has identified no prejudice it has incurred as a result of Peeler's thirteen-day delay in filing his Bill of Costs. Furthermore, although Peeler filed the Bill of Costs as an exhibit to a post-trial motion rather than as a motion itself, Peeler proposes to immediately remedy this oversight by filing a separate motion for costs upon the Court's denial of KVH's present Motion to Strike. (Doc. # 132 at 5). Indeed, Peeler titles his response to the Motion to Strike as both a response and a

49

"Motion for Extension of Time to File Motion for Costs."
(Id.).  Furthermore, the Court finds that the slight delay
has not had a significant impact on these judicial
proceedings, and that Peeler's uncertainty regarding the
finality of the judgment -- given the particular
circumstances surrounding the Court's determination of
prejudgment interest in this case -- is excusable.

The Court thus finds that Peeler's omission constitutes
excusable neglect.  The Court acknowledges KVH's request
within the Motion that, "[s]hould the Court . . . deem
Plaintiff's Bill of Costs timely, KVH respectfully reserves
the right to file substantive opposition to the same and
requests that the Court allow it no less than fourteen days
(14) to do so."  (Doc. # 126 at 3).  KVH will have the
opportunity to respond to Peeler's Motion for Taxation of
Costs upon Peeler's proper filing of the motion in accordance
with this Order.

Accordingly, KVH's Motion to Strike Peeler's Untimely
Bill of Costs (Doc. # 126) is denied.  Peeler is directed to
file, on or before April 18, 2014, a motion for taxation of
costs in this matter, to which KVH may respond on or before
May 2, 2014.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)  Plaintiff's Renewal of the Motion for Judgment as a Matter of Law and to Amend Judgment to Tax Costs (Doc. # 123) is **DENIED**.

(2)  Plaintiff's Motion for New Trial on Damages or in the Alternative Motion for Additur (Doc. # 124) is **DENIED**.

(3)  Plaintiff's Motion for Application of Prejudgment Interest (Doc. # 125) is **GRANTED** in part as provided herein.  The Clerk is directed to add to the Judgment in this case prejudgment interest running from April 12, 2012, at a rate of twelve percent per annum.

(4)  Defendant's Motion to Strike Peeler's Untimely Bill of Costs (Doc. # 126) is **DENIED**.  Plaintiff is directed to file, on or before April 18, 2014, a motion for taxation of costs in this matter, to which KVH may respond on or before May 2, 2014.

(5)  Defendant's Motion to Strike Plaintiff's Post-Trial Motions (Doc. # 127) is **GRANTED** to the extent that Plaintiff's Renewal of the Motion for Judgment as a Matter of Law and to Amend Judgment to Tax Costs (Doc. # 123) and Plaintiff's Motion for New Trial on Damages or in the Alternative Motion for Additur (Doc. # 124) are denied.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u> day of April, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record